**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

---

ZENIDA HEATH,                           No. 1:20-cv-02049-NLH-KMW

        Plaintiff,

    v.                                  **OPINION**

GLOUCESTER TOWNSHIP et al.,

        Defendants.

---

**<u>APPEARANCES</u>**

DAVID WESLEY CORNISH
CORNERSTONE LEGAL GROUP, LLC
230 SOUTH BROAD STREET
17TH FLOOR
PHILADELPHIA, PA 19102

    *Counsel for Plaintiff.*

DOUGLAS DIAZ
VINCENT P. SARUBBI
ARCHER & GREINER, PC
ONE CENTENNIAL SQUARE
HADDONFIELD, NJ 08033-0968

    *Counsel for Defendant Gloucester Township.*

**<u>HILLMAN</u>, District Judge**

    This matter arises from an incident in which Plaintiff
Zenida Heath was pulled over and handcuffed by a Gloucester
Township police officer.  Plaintiff brings a series of claims
under 42 U.S.C. § 1983 and New Jersey state law for violations
of her constitutional and civil rights.  Presently before the
Court is Defendant Gloucester Township's motion to dismiss, as

well as Plaintiff's motions for an extension and for leave to
file an amended complaint.  For the reasons that follow,
Defendant's motion will be granted in part and denied in part,
and Plaintiff's motions will be denied.  Plaintiff, however,
will be separately granted leave to file an amended complaint if
she is able to cure the deficiencies noted in this Opinion for
any claims not dismissed with prejudice.

## Background

Plaintiff Zenida Heath is a black woman in her mid-30s, who
works as a psychiatrist and professor.  She alleges that on June
6, 2019, at approximately 3:30 PM, she was driving her car with
her three children and two students she had been tutoring
through Gloucester Township, New Jersey.  Plaintiff was pulled
over by Gloucester Police Officer #1 ("Officer 1"), a white man,
who demanded her proof of identification.

After Plaintiff provided Officer 1 with identification, he
went back to his vehicle; shortly after, he returned, ordered
her out of her vehicle, and handcuffed her, claiming that there
was an outstanding warrant for her arrest.  Plaintiff alleges
that she "was handcuffed so tightly her wrists were in extreme
pain." (ECF No. 1 at ¶ 18).  Officer 1 then contacted police
dispatch, and Gloucester Police Officer #2 ("Officer 2") arrived
on the scene.

During this time, Plaintiff's two students repeatedly told

Officer 1 that Plaintiff had not committed any traffic violations or criminal violations, and therefore he did not have any right or reason to pull her over.  Officer 1 responded by stating that he had pulled her over for a driving infraction. When Officer 2 arrived, Plaintiff told him that she had not committed any traffic violations and believed she had been racially profiled, and her students further repeated that Plaintiff had not committed any traffic violations.  Officer 2 then spoke to Officer 1 separately; after this conversation, Officer 1 informed Plaintiff that she "did not actually have a warrant for her arrest, and that she was free to leave the scene." Id. at ¶ 25.  At no point was Plaintiff cited for any driving infraction or charged with any criminal offense.

On February 25, 2020, Plaintiff filed a complaint in this Court against Gloucester County, Gloucester Township, and the two unnamed officers.  (ECF No. 1).  She later filed a stipulation of dismissal as to Gloucester County.  (ECF No. 3). On May 26, 2020, Defendant Gloucester Township filed a motion to dismiss all claims.  (ECF No. 5).  Defendant's motion was set for July 6, 2020, leaving a June 22 due date for any opposition Plaintiff wished to file to the motion.  June 22 came and passed with no such opposition brief being filed; however, on July 1, Plaintiff filed a motion for an extension of time to respond to Defendant's motion to dismiss, (ECF No. 8), which Defendant has

3

opposed.  Finally, 13 days later, on July 14, Plaintiff further filed a motion for leave to file an amended complaint, which seeks to add Camden County as a defendant.  (ECF No. 10). Presently pending before the Court are Defendant's motion to dismiss, and Plaintiff's motions for an extension of time and for leave to file an amended complaint.

## Discussion

### I.  Subject Matter Jurisdiction

The Court has original federal question jurisdiction over Plaintiff's federal claims under 28 U.S.C. § 1331, and has supplemental jurisdiction over the New Jersey state law claims pursuant to 28 U.S.C. § 1367(a).

### II.  Legal Standards Governing Motions to Dismiss

When considering a motion to dismiss a complaint for failure to state a claim upon which relief can be granted pursuant to Federal Rule of Civil Procedure 12(b)(6), a court must accept all well-pleaded allegations in the complaint as true and view them in the light most favorable to the plaintiff. Evancho v. Fisher, 423 F.3d 347, 351 (3d Cir. 2005).  It is well settled that a pleading is sufficient if it contains "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a

plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . . ." <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 555 (2007) (alteration in original) (citations omitted) (first citing <u>Conley v. Gibson</u>, 355 U.S. 41, 47 (1957); <u>Sanjuan v. Am. Bd. of Psychiatry & Neurology, Inc.</u>, 40 F.3d 247, 251 (7th Cir. 1994); and then citing <u>Papasan v. Allain</u>, 478 U.S. 265, 286 (1986)).

To determine the sufficiency of a complaint, a court must take three steps: (1) the court must take note of the elements a plaintiff must plead to state a claim; (2) the court should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth; and (3) when there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief. <u>Malleus v. George</u>, 641 F.3d 560, 563 (3d Cir. 2011) (quoting <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 664, 675, 679 (2009) (alterations, quotations, and other citations omitted).

A district court, in weighing a motion to dismiss, asks "not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claim." <u>Twombly</u>, 550 U.S. at 563 n.8 (quoting <u>Scheuer v. Rhoades</u>, 416

U.S. 232, 236 (1974)); see also Iqbal, 556 U.S. at 684 ("Our decision in Twombly expounded the pleading standard for 'all civil actions' . . . ."); Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009) ("Iqbal . . . provides the final nail in the coffin for the 'no set of facts' standard that applied to federal complaints before Twombly."). "A motion to dismiss should be granted if the plaintiff is unable to plead 'enough facts to state a claim to relief that is plausible on its face.'" Malleus, 641 F.3d at 563 (quoting Twombly, 550 U.S. at 570).

A court in reviewing a Rule 12(b)(6) motion must only consider the facts alleged in the pleadings, the documents attached thereto as exhibits, and matters of judicial notice. S. Cross Overseas Agencies, Inc. v. Kwong Shipping Grp. Ltd., 181 F.3d 410, 426 (3d Cir. 1999). A court may consider, however, "an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993). If any other matters outside the pleadings are presented to the court, and the court does not exclude those matters, a Rule 12(b)(6) motion will be treated as a summary judgment motion pursuant to Rule 56. Fed. R. Civ. P. 12(b).

### III. **Analysis**

Plaintiff's Complaint asserts twelve claims, under both 42 U.S.C. § 1983 and New Jersey state law.  Her § 1983 claims allege violations of numerous constitutional provisions, specifically alleging that Defendants' actions constituted false arrest (Count 1), excessive force (Count 3), assault (Count 5), false imprisonment (Count 7), unjustified search and seizure (Count 9), failure to intervene Count 10), and a Monell claim against Gloucester Township for their liability for the officers' actions.  (Count 12).  Her state law claims largely mirror these claims.

Defendant has moved to dismiss each of Plaintiff's claims on a number of grounds.  As mentioned above, Plaintiff has not filed any opposition to Defendant's motion to dismiss.  However, although Plaintiff did not file opposition to the present motion, "the Court must address unopposed motions to dismiss a complaint on the merits."  Estate of Casella v. Hartford Life Ins. Co., No. 09-2306, 2009 WL 2488054, at *2 (D.N.J. Aug. 11, 2009) (citing Stackhouse v. Mazurkiewicz, 951 F.2d 29, 30 (3d Cir. 1991)).  Accordingly, the Court will address Defendant's arguments for dismissal on the merits.

### A. **Plaintiff's § 1983 Claims**

Plaintiff first asserts a series of claims under § 1983 for violations of multiple different constitutional provisions.

7

Section 1983 is not a source of substantive rights, but provides a vehicle for vindicating the violation of other federal rights. Graham v. Connor, 490 U.S. 386, 393-94 (1989).  To state a claim for relief under § 1983, a plaintiff must allege the violation of a right secured by the Constitution or laws of the United States, and that the alleged deprivation was committed or caused by a person acting under color of state law.  West v. Atkins, 487 U.S. 42, 48 (1988); Piecknick v. Pennsylvania, 36 F.3d 1250, 1255-56 (3d Cir. 1994).

### 1. Claims under the Fifth, Sixth, Eight, and Fourteenth Amendments

Plaintiff asserts six separate § 1983 claims based on the actions of the officers at the scene that day.  In an example of highly generalized pleading, Plaintiff alleges that the actions she claims constitute false arrest, excessive force, assault, false imprisonment, unjustified search and seizure, and failure to intervene violate not only the Fourth Amendment, but different combinations of the Fifth, Sixth, Eight, and Fourteenth Amendments as well.  To the extent these counts allege violations of those amendments, each of them fail.

First, "the Fifth Amendment restricts the actions of federal officials, not state actors" such as the Defendants here.  Thomas v. East Orange Bd. of Educ., 998 F. Supp. 2d 338, 351 (D.N.J. 2014) (citing Nguyen v. U.S. Cath. Conf., 719 F.2d

52, 54 (3d Cir. 1983)).  Second, the Sixth Amendment's
protections explicitly only apply to criminal prosecutions.
U.S. Const. amend. VI.  Plaintiff herself pleads that she was
never charged nor cited for any criminal violation, and
accordingly no criminal prosecution ever occurred.  Third, the
Eight Amendment "applies only 'after [the State] has secured a
formal adjudication of guilt in accordance with due process of
law.'"  Calabrese v. Tierney, No. 19-12526 (FLW), 2020 WL
1485944, at *11 (D.N.J. March 27, 2020) (quoting Natale v.
Camden Cty. Corr. Facility, 318 F.3d 575, 581 (3d Cir. 2003)).
Again, Plaintiff was never charged for any crime, and therefore
no adjudication of guilt has occurred.

Finally, to the extent Plaintiff intended to assert claims
under the Fourteenth Amendment, they too fail.  First, the
claims asserted by Plaintiff here, all relating only to
Plaintiff's traffic stop and subsequent handcuffing, are
properly evaluated under the Fourth Amendment, not the
Fourteenth Amendment's due process clause.  See Boyd v. City of
Jersey City, 2018 WL 2958468, at *4 (D.N.J. June 13, 2018)
("[T]he constitutionality of arrests by state officials is
governed by the Fourth Amendment rather than due process
analysis.") (quoting Berg v. Cty. of Allegheny, 219 F.3d 261,
268-69 (3d Cir. 2000)); Bocchino v. City of Atl. City, 179 F.
Supp. 3d 387, 394 (D.N.J. 2016) ("Claims of excessive force at

the time of an arrest are evaluated based on the Fourth
Amendment's prohibition against unreasonable searches and
seizures."). Second, as Defendants note, despite referencing
the concept of equal protection in numerous of her claims,
Plaintiff has not actually alleged any separate count or claim
for a violation of equal protection under the Fourteenth
Amendment, instead simply including the phrase within the
paragraphs supporting claims most properly asserted under the
Fourth Amendment.

For these reasons, Plaintiff's claims under each of these
constitutional provisions will be dismissed. Her claims under
the Fifth, Sixth, and Eight Amendment, and her Fourteenth
Amendment due process claims, are futile and will be dismissed
with prejudice. To the extent that Plaintiff intended to plead
any Fourteenth Amendment equal protection claims, those claims
will be dismissed without prejudice. For the purposes of the
current Complaint, Plaintiffs § 1983 claims can only survive to
the extent they sufficiently allege violations of the Fourth
Amendment.

### 2. Claims under the Fourth Amendment

Plaintiff's only remaining § 1983 claims are therefore for
false arrest, excessive force, assault, false imprisonment,
unjustified search and seizure, and failure to intervene in
violation of the Fourth Amendment, and a claim against

Gloucester Township for their liability for these violations.
The Court will first address Plaintiff's claims for false arrest
and false imprisonment, as their elements and Defendant's
arguments for dismissal largely overlap.

To state a claim for false arrest, a plaintiff must
establish: "(1) that there was an arrest; and (2) that the
arrest was made without probable cause." James v. City of
Wilkes-Barre, 700 F.3d 675, 680 (3d Cir. 2012).  To state a
claim for false imprisonment, a plaintiff must establish: "(1)
that she was detained; and (2) that the detention was unlawful,"
which can similarly be "based on an arrest made without probable
cause."  Id. at 682-83 (citing Wallace v. Kato, 549 U.S. 384,
389, 127 S.Ct. 1091, 166 L.Ed.2d 973 (2007)).

"Here, there is no doubt that an arrest occurred when
Plaintiff 'was placed in handcuffs at the scene'" and told there
was an outstanding warrant for her arrest.  Catalano v. City of
Trenton, 2019 WL 2315092 (D.N.J. May 31, 2019) (quoting Estevez
v. City of Philadelphia, No. 06-3168, 2007 WL 707358, at *4
(E.D. Pa. Mar. 2, 2007)).  Nor is there any question that she
was detained.  Instead, Defendant's argument for dismissal of
Plaintiff's claims for false arrest and false imprisonment is
that Plaintiff has not sufficiently pled that the officers
lacked probable cause to detain and arrest her.

Defendant's central argument for why Officer 1 had probable

cause to arrest Plaintiff is that, as her Complaint
acknowledges, he told her that there was an outstanding warrant
for her arrest.  According to Defendant, the simple fact that he
later told her that there was not in fact such a warrant and she
was free to leave does not impact the probable cause analysis.
For this proposition, Defendant relies entirely on Catalano v.
City of Trenton, No. 18-11646 (FLW) (DEA), 2019 WL 2315092
(D.N.J. May 31, 2019).

In Catalano, an officer had initially arrested the
plaintiff in connection with an alleged outstanding warrant,
before subsequently releasing him after he overheard that there
had been a "mistake" and that there was not in fact any warrant.
Id. at 6.  However, the plaintiff there "expressly
acknowledge[d] that [the officer] learned that he had been
mistaken about the existence of the warrant only after Plaintiff
had been initially handcuffed," and the court emphasized that
"there is no allegation that [the officer] was untruthful about
whether the warrant existed."  Id.

These factual allegations are plainly different from the
allegations put forth by Plaintiff here.  Plaintiff does not in
any way acknowledge that Officer 1's claim that there was an
outstanding warrant for her arrest was a "mistake," and in fact
explicitly alleges that her seizure "was predicated on
falsehoods fabricated by the Defendant Officers," and that

12

"Defendant Officers knew or had reason to know of the falsity of the allegations they made against" her.  (ECF No. 1 at ¶¶ 29, 31).  If proven, Plaintiff's allegation that Officer 1 fabricated the alleged warrant would be sufficient to show a false arrest and false imprisonment in violation of the Fourth Amendment.  Accordingly, Defendant's motion to dismiss as to these claims will be denied.

Plaintiff next alleges that Officer 1's actions constituted an unreasonable search and seizure in violation of the Fourth Amendment.  Plaintiff's Complaint is not particularly clear as to whether her claim is predicated on the initial stop, her later handcuffing, or both; Defendant argues that either way, the claim must be dismissed.  To the extent that Plaintiff's claim is based on her handcuffing, the Court finds that it survives for the same reasons outlined above regarding her false arrest and false imprisonment claims.

Further, to the extent Plaintiff's claim is based on the initial traffic stop, the Court finds that she has also sufficiently stated a claim at this stage in this litigation. The Fourth Amendment protects individuals "against unreasonable searches and seizures."  U.S. Const. amend. IV.  A traffic stop is a "seizure" within the meaning of the Fourth Amendment, "even though the purpose of the stop is limited and the resulting detention quite brief."  Delaware v. Prouse, 440 U.S. 648, 653

13

(1979); see also United States v. Delfin-Colina, 464 F.3d 392,
396 (3d Cir. 2006).  In fact, "[i]n the context of a traffic
stop, the Fourth Amendment permits even a pretextual stop, if it
is supported by reasonable suspicion of a traffic violation."
Gray v. Hagnar, No. 19-15867(RMB-KMW), 2020 WL 3097471, at *3
(D.N.J. June 11, 2020) (citing United States v. Lewis, 672 F.3d
232, 237 (3d Cir. 2012)).

Plaintiff here explicitly pleads that she "was following
all traffic laws," that she had not committed any traffic
violations, and that she and her passengers repeatedly told the
officers that she had not committed any traffic violations.
(ECF No. 1 at ¶¶ 13, 20).  She further pleads that Officer 1's
claim that he had "pulled her over for a driving infraction" was
"predicated on falsehoods fabricated" by the officer, id. at ¶¶
21, 29, and that the seizure "was without probable cause,
articulable suspicion or other constitutionally permissible
basis."  Id. at ¶ 30.  Finally, she alleges that she was never
charged or cited for any infraction related to the traffic stop.
Id. at ¶ 26.

Defendant, for its part, argues only that Plaintiff's
acknowledgement that Officer 1 told her that she had been
stopped due to a "traffic violation" demonstrates that he had a
reasonable, articulable suspicion that she had committed such an
offense.  (ECF No. 5-1 at 15).  However, the simple fact that

14

Officer 1 told Plaintiff, allegedly after she had already been removed from the car and handcuffed based on an alleged warrant for her arrest, that he had witnessed a traffic violation does not guarantee that the stop was permissible.  See <u>Gentles v. Portock</u>, 2020 WL 3412545, at *4 (E.D. Penn. June 22, 2020) ("The mere fact that Plaintiff was *told* he was under criminal investigation does not mean Defendants were justified in stopping him.").  At the motion to dismiss stage, the Court must accept as true Plaintiff's allegations that she had been following all traffic laws and had not committed any traffic violations or other crimes that would justify the traffic stop. Defendant's motion to dismiss will therefore be denied as to this claim.[1]

Plaintiff also brings a § 1983 claim for excessive force in violation of the Fourth Amendment.  While Plaintiffs' Complaint is not overly clear on this point, the Court interprets this claim to relate to her allegation that she "was handcuffed so tightly her wrists were in extreme pain."  (ECF No. 1 at ¶ 18). Defendant's only argument regarding Plaintiff's excessive force claim is that she "fails to plead facts sufficient to sustain a claim for excessive force in implementing the lawful arrest."

---

[1] To the extent that Plaintiff's false imprisonment claim, discussed above, was intended to be based on her initial traffic stop, the Court finds that it survives dismissal for the same reasons.

(ECF No. 5-1 at 15).

"To state a claim for excessive force as an unreasonable seizure under the Fourth Amendment, a plaintiff must show that a 'seizure' occurred and that it was unreasonable." Kopec v. Tate, 361 F.3d 772, 776 (3d Cir. 2004). While the Third Circuit has recognized that plaintiffs can pursue successful excessive force claims based on handcuffing, it also warned that "we do not intend to open the floodgates to a torrent of handcuff claims." Id. at 777. This Court, and other courts in this district, have previously dismissed excessive force claims regarding tightness of handcuffs when the Complaint pled only that their handcuffs were too tight resulting in injury, and failed to include additional facts such as the amount of time the plaintiff was handcuffed and whether they had requested the cuffs be loosened. Edwards v. Gahm, No. 16-5702, 2018 WL 5669166, at *2 n.4 (D.N.J. Nov. 1, 2018). See also Bey v. Kranz, et al., No. 19-14703 (SDW) (LDW), 2020 WL 6938335, at *1, 5 (D.N.J. Nov. 25, 2020) (holding that "Plaintiff's vague allegations" that an officer had "violently twisted the tight[] handcuffs against [her] wrist which caused extreme pain and swelling" were "insufficient to plausibly support that Defendants used *unreasonable* force") (emphasis in original).

Here, Plaintiff has pled only that Officer 1 handcuffed her "so tightly her wrists were in extreme pain," and that she

suffered pain to her shoulders and wrists from the handcuffing.
Without further factual allegations regarding the length of time
she was handcuffed, whether she requested the cuffs be loosened
or gave any sign that they were too tight or causing pain, or
any other related facts, the Court finds that she has failed to
plead sufficient facts to state an excessive force claim.
Defendant's motion to dismiss will be granted as to this claim
without prejudice and with leave to amend.

Plaintiff has also brought a § 1983 claim for "assault" in
violation of the Fourth Amendment under Count 5.  However, while
assault claims can clearly be pursued under state tort law, and
Plaintiff does allege a state law assault claim here, she has
put forth no argument or case law to support the concept that
there is an independent basis for pursuing an "assault" claim
under the Fourth Amendment.  Instead, an officer's actions that
were tantamount to assault would more properly serve as the
basis for an excessive force claim — a claim that Plaintiff has
separately alleged here, as analyzed above.  See Hill v. Algor,
85 F. Supp. 2d 391, 404 (D.N.J. 2000) ("[T]he Court notes that
an unprovoked assault, if proved by [plaintiff], would
constitute excessive force under [] the Fourth Amendment.").
Accordingly, Count 5 will be dismissed with prejudice.

Plaintiff next alleges a claim for failure to intervene.
"[A] police officer has a duty to take reasonable steps to

17

protect a victim from another officer's use of excessive force," but only "if there is a realistic and reasonable opportunity to intervene." El v. City of Pittsburgh, 975 F.3d 327, 335 (3d Cir. 2020) (quoting Smith v. Mensinger, 293 F.3d 641, 650-51 (3d Cir. 2002)).

Here, Plaintiff has failed to plead sufficient facts to show that Officer 2 had a realistic and reasonable opportunity to intervene and attempt to stop Officer 1's alleged actions. First, as the Court has already found that Plaintiff has failed to sufficiently plead an excessive force claim, Officer 2 had no violation he could have intervened to stop.  Second, as Defendant notes, Plaintiff's own version of what happened that day shows that each of the relevant steps taken by Officer 1 that allegedly constitute a violation of her rights took place prior to Officer 2's arrival at the scene; accordingly, having not been present, Officer 2 could not have had a reasonable and realistic opportunity to intervene.  See Knox v. Doe, 487 F. App'x 725, 728 (3d Cir. 2012) (prison guards who were not present during events "could not have intervened").  And, as Plaintiff's own Complaint makes clear, shortly after Officer 2's arrival and conversation with Officer 1, Officer 1 removed Plaintiff's handcuffs and told her she was free to leave.  To the extent that Officer 2 had any legal duty to intervene, Plaintiff's own pleading appears to show that he did.

18

Accordingly, Plaintiff has failed to state a claim for failure to intervene, and this claim will be dismissed.

### 3. **Monell Claim against Gloucester Township**

Finally, Count 12 seeks to hold Gloucester Township liable for the alleged constitutional violations of its officers.  This claim falls under the theory of liability outlined in Monell v. New York City Dep't of Social Services, 436 U.S. 658 (1978), which held that municipalities and local governments can be liable for the constitutional violations of their employees when a plaintiff can demonstrate that the employees' actions were pursuant to a policy or custom of the municipality itself.  Id. at 694; Watson v. Abington, 478 F.3d 144, 155 (3d Cir. 2007).

Defendant first argues that Count 12 must be dismissed because Plaintiff has not pled any sufficient underlying constitutional violations for which Gloucester Township could be held liable.  However, as the Court found above, several of Plaintiff's claims for constitutional violations allegedly committed by Officer 1 are sufficient to withstand Defendant's motion to dismiss.  Accordingly, the Court will assess Gloucester Township's remaining argument that it cannot be liable for any Fourth Amendment violations because Plaintiff has not pled sufficient factual allegations to plausibly state a Monell claim.

Under Monell, a municipality may be liable under § 1983 "if

the plaintiff identifies a municipal 'policy' or 'custom' that was the 'moving force' behind the injury." Jewell v. Ridley Township, 497 F. App'x 182, 185 (3d Cir. 2012) (quoting Monell, 436 U.S. at 694).  A policy exists "when a decision-maker with final authority issues an official proclamation, policy, or edict." Noble v. City of Camden, 112 F. Supp. 3d 208, 221 (D.N.J. 2015) (internal quotations and citations omitted).  "[A] custom may be established by showing that a given course of conduct, although not specifically endorsed or authorized by law, is so well-settled and permanent as virtually to constitute law." Id. (internal quotations and citations omitted).

"A Monell claim may also be premised on a municipality's failure to train, supervise, and discipline." Rollins on behalf of Estate of Salaam v. City of Newark, No. 18-14473, 2020 WL 1528035, at *3 (D.N.J. March 31, 2020).  To plead such a claim, a plaintiff "must demonstrate that a city's failure to train its employees 'reflects a deliberate or conscious choice.'" Estate of Roman v. City of Newark, 914 F.3d 789, 798, 800 (3d Cir. 2019) (quoting Brown v. Muhlenberg Township, 269 F.3d 205, 215 (3d Cir. 2001)).  For claims involving police officers, the alleged failure must "amount[] to deliberate indifference to the rights of persons with whom the police come into contact." Id. (quoting City of Canton v. Harris, 489 U.S. 378, 388 (1989)).  Deliberate indifference is plausibly pled by showing that "(1)

20

municipal policy makers know that employees will confront a particular situation, (2) the situation involves a difficult choice or a history of employees mishandling, and (3) the wrong choice by an employee will frequently cause deprivation of constitutional rights." Doe v. Luzerne County, 660 F.3d 169, 180 (3d Cir. 2011) (internal brackets omitted).

Here, Plaintiff pleads all three forms of liability under Monell. Defendant argues that she has not plead sufficient facts under any theory, and instead only "aver[red] in boilerplate fashion" that the Township had a custom or policy which was unconstitutional and had failed to adequately train, supervise, and discipline its officers. (ECF No. 5-1 at 6-8).

This Court previously addressed boilerplate allegations and the Third Circuit's standards for adequately pleading claims under Monell in Kilgarriff v. Strunk, 1:18-cv-10120-NLH-AMD, 2019 WL 1434763 (D.N.J. March 31, 2019). In that case, the plaintiff had alleged that Ocean City:

> maintained an "official policy, practice or custom" of failing to properly train its police officers to refrain from "(1)unlawfully and maliciously assaulting, arresting and harassing citizens; (2) intentionally, recklessly and/or negligently misrepresenting the facts of arrests and/or other police-citizen encounters; (3) falsifying police and/or other official records; (4) withholding and/or mishandling evidence; (5) making false arrests and/or (6) using unreasonable and excessive force."

Id. at *5.

That plaintiff further alleged that this "official policy,

21

practice or custom" fostered "superficial and shallow Internal Affairs process which ignored evidence and patterns of police misconduct on individual and department levels," where Ocean City failed to "adequately track excessive force complaints, administrative complaints, and/or use of force incidents." Id.

Finally, that plaintiff alleged that Ocean City was aware of numerous similar police citizen encounters "whereby they customarily and frequently subjected citizens held in custody to physical and mental abuse; unlawfully and maliciously assaulted, arrested and harassed citizens; intentionally, recklessly and/or negligently misrepresented the facts of arrests and/or other police citizen encounters; falsified police and/or other official records; made false arrests, mishandled and/or withheld evidence and/or used unreasonable and excessive force on citizens/arrestees." Id. The plaintiff claimed that "Ocean City was aware of all these failures, but did nothing to remedy or rectify them, all of which led to his injuries." Id.

This Court found that the Kilgarriff plaintiff's allegations for Monell liability were "wholly conclusory without one tidbit of factual support," and that the plaintiff had entirely failed to "back[] up his claims with facts, which, when accepted as true, provided support as to the plausibility of his Monell claims." Id. It specifically compared the plaintiff's claims to those in Estate of Roman v. City of Newark, 914 F.3d

22

789 (3d Cir. 2019), where the Third Circuit found that a
plaintiff who had pointed to specific facts in the form of a
press release, newspaper article, and consent decree supporting
his allegations of a pattern or practice of unconstitutional
arrests had sufficiently pled claims for Monell liability, id.
at 799, and found that the boilerplate language pled by the
Kilgarriff plaintiff failed to reach the requisite level.
Kilgarriff, 2019 WL 1434763 at *4-5.

Turning to Plaintiff's claims here, the Court finds that
she has similarly failed to sufficiently plead a claim for
Monell liability under any theory.  Plaintiff's claims are
highly similar to those this Court rejected in Kilgarriff.
While the Court will not quote all 19 paragraphs found under
Count 12, the following lengthy paragraph is representative of
the rest of Plaintiff's allegations:

> Defendants have encouraged, tolerated, ratified and has
> been deliberately indifferent to the following patterns,
> practices and customs and to the need for more or different
> training, supervision, investigation or discipline in the
> areas of: Unlawful detentions and unlawful arrests by
> police officers, including the Defendant Officers; The
> proper exercise of police powers, including but not
> limited to the use of false information to obtain search
> warrants, fabrication of evidence, unlawful arrest,
> malicious prosecution and unlawful detention; The
> monitoring of officers whom it knew or should have known
> were suffering from emotional and/or psychological
> problems that impaired their ability to function as
> officers; The failure to identify and take remedial or
> disciplinary action against police officers who were the
> subject of prior civilian or internal complaints of
> misconduct; Police officers' use of their status as police

23

officers to employ the use of unlawful arrest, or to achieve ends not reasonably related to their police duties; Police officers' use of their status as police officers to employ the use of unlawful arrest, invoke the Code of Silence, or to achieve ends not reasonably related to police duties; The failure of police officers to follow established policies, procedures, directives and instructions regarding the securing of search warrants and the use of arrest powers under such circumstances as presented in this case; The refusal of police officers to intervene when other officers violate the rights of citizens in their presence; The failure to identify and take remedial or disciplinary action against units of officers assigned to narcotics investigations in light of repeated instances of misconduct over a period of many years as alleged in this Complaint; and The refusal of police officers to report or provide information concerning the misconduct of other police officers, a custom or practice known as the "Code of Silence."

ECF No. 1 at ¶ 91.

This paragraph provides no more factual support, and makes no greater effort to bolster Plaintiff's allegations that Defendant had an unconstitutional custom or policy, or had failed to properly train or supervise its officers, than did the allegations in Kilgarriff.  Nor do any of her other allegations under Count 12 go any further; instead, Plaintiff relies entirely on conclusory statements, and has put forth no specific factual allegations whatsoever to support her boilerplate pleadings for Monell liability.  "Even though in order to survive a motion to dismiss Plaintiff is not required to plead the level of proof needed to ultimately prove [her] municipal liability claims, Plaintiff must do more than [she] has pleaded here." Kilgarriff, 2019 WL 1434763 at *5.  For these reasons,

24

Defendant's motion to dismiss Plaintiff's claim for <u>Monell</u>
liability against Gloucester Township will be granted.

### B. **Plaintiff's State Law Claims**

The Court turns next to Plaintiff's state law claims.
Plaintiff alleges a number of "supplemental state law" claims in
her Complaint, for false arrest, "excessive force/battery,"
assault, false imprisonment, and failure to intervene.  (Counts
2, 4, 6, 8, and 11).  Defendant argues that the first four
claims must be dismissed because Plaintiff failed to provide
notice of these claims as required by the New Jersey Tort Claims
Act ("NJTCA").

The NJTCA requires that notice of a claim of injury against
a public entity be provided "no later than the 90th day after
accrual of the cause of action."  N.J. Stat. Ann. § 59:8-8.
"Failure to comply with the NJTCA notice requirement precludes
recovery against both a public employee and a public entity."
<u>Lozano v. New Jersey</u>, No. 17-cv-6581 (KM)(JBC), 2020 WL 3542374,
at *14 (D.N.J. June 29, 2020) (citing <u>Velez v. City of Jersey
City</u>, 180 N.J. 284, 296 (2004)).  "A plaintiff who fails to file
such a claim within the 90-day period is 'forever barred from
recovering against a public entity or public employee.'"  <u>Id</u>.
(quoting N.J. Stat. Ann. § 59:8-8).

Courts in this district have previously found that the
NJTCA's notice requirement applies to state tort claims for

25

false arrest, false imprisonment, battery, and assault.  Teel v.
Eliasen, No. 17-02253 (RBK/AMD), 2018 WL 5307806, at *3-4
(D.N.J. Oct. 28, 2018).  Claims such as these accrue on the day
of the incident or arrest.  See Lozano, 2020 WL 3542374 at *14
(citing Bayer v. Twp. of Union, 997 A.2d 1118, 1130 (App. Div.
2010)).

All of Plaintiff's state law claims relate to the incident
on June 6, 2019; the Complaint contains no allegations related
to any events that occurred after that date.  And Plaintiff has
alleged claims only against public entities and employees.
Accordingly, the NJTCA required Plaintiff to provide notice of
these claims by September 4, 2019.  However, nowhere does
Plaintiff's Complaint plead that she provided such notice.
"Because there is nothing in the complaint setting forth any
factual allegation regarding a notice of tort claim, and because
Plaintiff has not opposed the motion on this ground,"
Plaintiff's state law claims for false arrest, false
imprisonment, battery, and assault must be dismissed.
Queensbury v. Petrone, No. 14-cv-7230 (RMB/AMD), 2015 WL
4715323, at *5 (D.N.J. Aug. 7, 2015).

Defendant next argues that Plaintiff's remaining state law
failure to intervene claim must be dismissed for failure to
state a claim.  As explained above, Plaintiff has failed to
state any plausible claim for failure to intervene here.  For

the same reasons as her § 1983 failure to intervene claim,
Plaintiff's state law claim, based on the exact same factual
allegations, fails as well and will be dismissed.

**IV. Plaintiff's Motion to Amend and Motion for an Extension**

Rather than respond to or oppose Defendant's motion to
dismiss, Plaintiff chose to file a motion for leave to file an
amended complaint. (ECF No. 10). As the basis for her motion,
Plaintiff first cites Federal Rule of Civil Procedure
15(a)(1)(B), which provides that a "party may amend its pleading
once as a matter of course within . . . 21 days after service of
a motion under Rule 12(b), (e), or (f)." See ECF No. 10 at 3).
However, Plaintiff did not file her motion for leave to file an
amended complaint until July 14 — over 6 weeks after Defendants
had filed their motion to dismiss. Accordingly, Rule
15(a)(1)(B) is inapplicable to the present motion.

All other amendments are governed by Rule 15(a)(2), which
provides that "a party may amend its pleading only with the
opposing party's written consent or the court's leave." The
Court "should freely give leave when justice so requires." Fed.
R. Civ. P. 15(a)(2). And although "[t]he decision to grant or
deny leave to amend under Rule 15(a) is 'committed to the sound
discretion of the court,'" Arab African Int'l Bank v. Epstein,
10 F.3d 168, 174 (3d Cir. 1993), as a general rule "[a]n
amendment must be permitted in the absence of undue delay, bad

faith, dilatory motive, unfair prejudice, or futility of amendment." Van Duyne v. Stockton University, No. 1:19-cv-21091-NLH-KMW, 2020 WL 6144769, at *2 (D.N.J. Oct. 20, 2020) (quoting Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002)).

Here, Plaintiff filed a form of a proposed amended complaint that identifies the differences between her initial complaint and the proposed amended filing, as required by Local Civil Rule 15.1. (ECF No. 11). From the Court's review of the proposed amendments, it appears that Plaintiff simply intends to add Camden County as a party; the only changes made in the proposed amended complaint are to add Camden County as a defendant, and to replace two paragraphs which previously referred to Gloucester County and Township, ¶¶ 9 and 12, with almost identical paragraphs referencing Camden County instead. Plaintiff's amended complaint includes no other changes, and no additional factual allegations whatsoever.

With no additional facts or changes made to the core allegations, the addition of Camden County, who could only face liability under the same theories of Monell liability that Plaintiff's current complaint pursues against Gloucester Township, would have no impact on the sufficiency of Plaintiff's claims at this stage. Plaintiff's proposed claims against Camden County would fail for the exact same reasons as her

28

claims against Gloucester Township.  Plaintiff states that she seeks leave to amend "to cure some deficiencies which only come to light after the Plaintiff's reviewing their initial filing, the Defendants responses, and a further investigation."  (ECF No. 10 at 4).  "Plaintiff's proposed amended complaint, however, fails to cure the legal deficiencies outlined in this Opinion, and therefore, Plaintiff's motion to amend will be denied as futile."  Lax v. City of Atlantic City, No. 1:19-cv-7036-NLH-AMD, 2019 WL 7207472, at *6 (D.N.J. Dec. 27, 2019).

However, the Court recognizes that Third Circuit precedent "supports the notion that in civil rights cases district courts must offer amendment — irrespective of whether it is requested — when dismissing a case for failure to state a claim unless doing so would be inequitable or futile."  Fletcher-Harlee Corp. v. Pote Concrete Contractors, Inc., 482 F.3d 247, 251 (3d Cir. 2007).  Here, while Plaintiff's present motion to amend to add Camden County as a defendant will be denied as futile due to its failure to allege any additional relevant facts sufficient to overcome the deficiencies in her original complaint, a number of Plaintiff's claims, including those against the only currently named Defendant, Gloucester Township, will be denied without prejudice.  Consequently, the Court will afford Plaintiff 30 days to file an amended complaint to assert claims that have not been dismissed with prejudice by this Opinion and accompanying

Order, and to fix the deficiencies outlined by this Opinion, if she can do so in compliance with the relevant pleading standards.

Finally, shortly prior to filing her motion for leave to file an amended complaint, Plaintiff filed a motion for an extension of time to respond to Defendant's motion to dismiss. (ECF No. 8).  The Court first notes that Plaintiff's filing of a motion for leave to file an amended complaint appears to demonstrate that she no longer intended to file any opposition to the motion to dismiss.  However, even if she had, her motion for an extension will be denied.  This Court has discretion to extend a deadline after the time has expired upon a showing of good cause and excusable neglect.  See Fed. R. Civ. P. 6(b)(1)(B); Drippe v. Tobelinski, 604 F.3d 778, 782 (3d Cir. 2010).  Plaintiff filed this motion 9 days after the due date for her to file any opposition to the motion to dismiss, and failed to provide any explanation at all for her failure to file the motion for an extension until after the due date had already passed.  Even after Defendant filed a brief opposing the motion for an extension, Plaintiff has failed to make any attempt at providing an explanation for her late request; it appears to the Court that her inability to provide a sufficient basis for the extension may explain the decision to pursue the filing of an amended complaint that included almost no additional allegations

less than two weeks later.  Regardless, her motion for an extension will also be denied.  In any event, any potential prejudice is cured by the granting of leave to amend those claims not dismissed as futile.

## Conclusion

For the reasons expressed above, Defendants' motion to dismiss (ECF No. 5) will be granted in part and denied in part. Plaintiff's claims for false arrest, false imprisonment, and unreasonable search and seizure in violation of the Fourth Amendment survive.  To the extent Plaintiff intended to allege claims under the Fifth, Sixth, and Eight Amendment, and the Fourteenth Amendment's due process, those claims will be dismissed with prejudice; all other claims will be dismissed without prejudice.  However, Plaintiff will be permitted 30 days from the entry of this Opinion and accompanying Order to file any amended complaint seeking to cure the deficiencies outlined in this Opinion.  Finally, Plaintiff's pending motions for an extension of time and for leave to file an amended complaint (ECF No. 8 and 10) will be denied.

An appropriate Order will be entered.


Date: December 4, 2020                      /s Noel L. Hillman
At Camden, New Jersey              NOEL L. HILLMAN, U.S.D.J.